UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:05-CR-80 PS |
| | ) | |
| JIMMIE CONLEY | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Jimmie Conley's Motion to Suppress. [Doc.10]. He seeks to suppress the evidence obtained from a warrantless search conducted on January 12, 2005. Because the homeowner consented to search the common area in question – including the closed container found therein – the search was proper and the defendant's motion must be DENIED.

**I. BACKGROUND**

On January 12, 2005, at approximately 2:00 a.m., Gary Police Officer Samuel Abegg was dispatched to 3858 Virginia Ave. in Gary, Indiana. Officer Abegg was familiar with this residence as he had been called there several times in the past. At the residence, Officer Abegg met Anthony Coltrin, the homeowner. Coltrin invited Officer Abegg into the kitchen of the house. Janet Arend, a female resident of the house, was also in the kitchen. Coltrin and Arend told Officer Abegg that they believed Jimmie Conley, a tenant occupying a basement bedroom, was keeping a firearm in that bedroom. Conley's wife, from whom he was separated, was also present via speaker phone. She confirmed to Officer Abegg that Conley kept a weapon in a lock-box in the basement bedroom.

Coltrin's residence is one-story house with a finished basement. The main floor of the residence has a living room, dining room, kitchen, bathroom, and two bedrooms – one is

Coltrin's bedroom and the other is his office.  In the basement, there is a family room, laundry room, and a third bedroom.  Coltrin allowed Conley to stay in the basement bedroom rent-free so long as Conley contributed to household expenses.  Conley had access to all of the common areas of the home including the living, dining, and family rooms, the kitchen, the laundry room and the bathroom.  Conley did not have access to Coltrin's bedroom or office and Coltrin did not have access to the basement bedroom where Conley stayed.

Coltrin asked Officer Abegg to go to the basement bedroom and remove the firearm from the residence.  Coltrin testified that he wanted the firearm removed, in part, because he believed he was in danger.  He also wanted the firearm removed because, as a convicted felon himself, he knew it was illegal for him to have a firearm.

Officer Abegg asked if Coltrin had access to the basement bedroom.  When Coltrin responded that he did not have a key, Officer Abegg informed Coltrin that he could not enter or search Conley's room without Conley's permission.  He told Coltrin to call the police if Conley returned to the residence so that Officer Abegg could return to the residence to speak with Conley.  After Officer Abegg left, Arend called Conley at work and told him to return to the residence.

When Conley arrived back at the residence, Coltrin called the police once again and Officer Abegg returned to the residence.  Officer Abegg pulled into the driveway at the rear of the house.  He was in full uniform and driving a marked car.  Officer Abegg noticed a man (later identified as Conley) starting to leave through the back door of the house.  Officer Abegg then exited his vehicle and started walking towards the back door.  However, as Officer Abegg walked up, Conley turned around and walked back into the house.  Officer Abegg noticed that

Conley was carrying a t-shirt draped over his right hand. He followed Conley to the threshold of the rear entrance to the house which led into the kitchen. Although Officer Abegg told Conley to stop so that he could speak with Conley, Conley kept walking. Arend, who was in the kitchen, waived Officer Abegg into the residence. He followed Conley from the kitchen into the dining area. Conley walked into a bathroom and then walked out after four or five seconds. While in the bathroom, Conley did not close the door or turn on any lights.

After Conley exited the bathroom, Officer Abegg told him to go stand with two other police officers who had arrived on the scene. Officer Abegg then went into the bathroom to look around. He found a small cardboard box, but could not remember what the outside of the box looked like. Officer Abegg did not question anyone about the box, but opened the box and found a small caliber firearm inside. He then arrested Conley for possession of the firearm.

## II.  DISCUSSION

The defendant contends that Officer Abegg's search of the box, a closed container, without the consent of its owner, Jimmie Conley, was illegal. In its original briefing, the defendant focused his argument on Officer Abegg's search of the bathroom in general. However, during oral argument, the defendant clarified his position to be an objection to Officer Abegg's search of the cardboard box that he found in the bathroom rather than a search of the bathroom itself. After reviewing supplemental briefing on the closed container issue, we now find that Officer Abegg obtained valid consent for both the search of the bathroom and the search of the container.

**A. The Search of the Bathroom**

Ordinarily, the government cannot legally enter a private residence and conduct a search without a warrant. *United States v. Pedroza*, 269 F.3d 821, 820 (7th Cir. 2001). However, the "probable cause and warrant requirements of the Fourth Amendment are not applicable where a party consents to a search, where a third party with common control over the searched premises consents, or where an individual with apparent authority to consent does so." *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000). A third party may consent to search if he has common authority based on the mutual use of property by persons with joint access or control. *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998).

Here, there is little question that Coltrin, the owner of the residence, had the authority to consent to the search of bathroom to which he had ready access in the house that he owned and occupied. The question becomes whether, in fact, he actually consented. He plainly did. Coltrin testified that he originally called the police to ask them to remove a firearm from the premises. However, Officer Abegg informed Coltrin that he could not enter Conley's room without Conley being present. Officer Abegg told Coltrin that he would return to the residence if and when Conley returned.

After Officer Abegg left the residence, Arend called Conley at work and told him to return home. Immediately after doing so, Coltrin called the police to ask them to return to the residence. When Officer Abegg returned to the house, he encountered Arend who waived him into the kitchen of the residence. Under this set of circumstances, it is clear that Officer Abegg reasonably believed that he had the authority to search the common areas of the residence for firearms. Indeed, that was why he was called to the residence in the first place. Moreover,

Anthony Coltrin testified that Officer Abegg did, in fact, have his consent to search the residence the second time. Clearly, then, Officer Abegg's search of the bathroom was conducted pursuant to valid consent.

B.     The Search of the Box

The more difficult question, however, remains: did Anthony Coltrin have the authority to consent to a search of the closed container found in the common area? We hold that he did.

The Seventh Circuit has held that "generally, consent to search a space includes consent to search containers within that space where a reasonable officer would construe the consent to extend to the container." *Melgar*, 227 F.3d at 1041. This rule derives from the Supreme Court's holding that a "lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). This commonsense proposition is based on the fact that once a lawful search is underway, the police need not make fine "distinctions between closets, drawers and containers" because such considerations are trumped by the "interest in the prompt and efficient completion of the task at hand." *Id*. at 821. Any other rule would require police to obtain a kind of rolling consent each time they encounter a closed area during an otherwise permissible consent search and this would place "an impossible burden on the police." *Melgar*, 227 F.3d at 1042.

Although the general rule is that consent to search a space includes consent to search containers within the space, such consent is not valid where the police have "positive knowledge" that the container does not belong to the person who gave the consent. *Melgar,* 227 F.3d at 1041. In this situation, the consenting party's apparent authority would obviously be

called into question.  *United States v. Basinski*, 226 F.3d 829, 834-35 (7th Cir. 2000).

Conley argues that an objectively reasonable person assessing the situation would have no basis to conclude that Coltrin had the authority to consent to the search of the container.  Def. Supplemental Brief at 3.  But this argument misconstrues the standard.  Once consent has been established, as it has been here, the government does not have to then prove that the police had "positive knowledge that the closed container is not under the authorizer's control."  *Melgar*, 227 F.3d at 1041.  Rather, once consent is obtained, the police may search containers in the area as long as the police "do *not* have reliable information that the container is *not* under the authorizer's control."  *Id.* (emphasis in original).   Thus, the "risk of uncertainty" runs in favor of the police.  *Id.*

We can conceive of several clear examples of the type of ownership indicia necessary to defeat a third party's apparent authority to consent to a search of a container found within a common area.  The first example is where the container is labeled with a tag or identifying mark listing a name other than the name of the person authorizing the search.  *Id.*; *United States v. Rodriguez*, 888 F.2d 519, 522-25 (7th Cir. 1989); *United States v. Wright*, 2003 WL 23208970 at *5 (W.D. Wis. Sept. 19, 2003).  The second example is where something about the object itself, in the absence of a label, demonstrates that the authorizing party is most likely not the owner of the container.  *United States v. Welch*, 4 F.3d 761, 765 (9th Cir. 1993) (container search not valid where man purported to consent to search of woman's purse).  Finally, a third-party consent is more likely to be invalid where the owner has taken action to secure the item, thereby demonstrating a heightened privacy interest.  *Basinski*, 226 F.3d at 834 (lock on briefcase demonstrates heightened privacy interest and, with other factors, invalidates third party consent

to search the briefcase).

In this case, Officer Abegg had no objective information that the box did not belong to Coltrin, the individual who validly consented to the search of the bathroom.  In other words, a person with the same knowledge as Officer Abegg could reasonably believe that Coltrin had the authority to consent to the search of the container found in the bathroom.  First, the only information that Officer Abegg had was that Conley kept the gun in a "lock box" in his bedroom.  The box found in the bathroom was, however, a cardboard box.  Second, the container was found on the floor of the bathroom, a common area.  Third, we have no evidence before us that the container was locked or labeled.  Indeed, Officer Abegg testified that it was a small cardboard box that he was able to open without assistance.  Fourth, although we note that Officer Abegg testified that when he first saw Conley, he believed Conley was concealing an item in his hand with a shirt, we have no evidence that the concealed item was the box that Officer Abegg found in the bathroom.

The only connection that we have between Conley and the cardboard box is that Conley walked into and out of the bathroom prior to Officer Abegg's search.  There was no testimony that Conley had the cardboard box when he walked into the bathroom.  There was no testimony that Conley made any move to identify the cardboard box as his even though he was present when Officer Abegg searched the box.  There was no testimony that any other individual present, including Coltrin or Arend identified the box as Conley's.  Simply put, there was no objective evidence available to Officer Abegg at the time of the search that would suggest that the cardboard box did not belong to Anthony Coltrin, the individual who consented to the search. In other words, while it is possible – perhaps even probable – that the box was brought into the

bathroom by Conley, there is no evidence that the police had "reliable information" of this fact, and the "risk of uncertainty" runs in favor of the police. *Melgar*, 227 F.3d at 1041. Without such objective evidence, we conclude that Officer Abegg reasonably believed that Coltrin had the authority to consent to the search of the cardboard box.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

**SO ORDERED.**

ENTERED: October 11, 2005

                                             s/ Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT